# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No._____

ENVISION HEALTHCARE CORPORATION,
and SHERIDAN HEALTHCORP, INC.,

      Plaintiffs,

v.

UNITED HEALTHCARE INSURANCE
COMPANY,

      Defendant.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiffs Envision HealthCare Corporation ("Envision") and Sheridan HealthCorp, Inc. ("Sheridan") (collectively, "Plaintiffs"), through their undersigned counsel, file this action against Defendant United HealthCare Insurance Company ("United" or "Defendant") and state as follows:

## PRELIMINARY STATEMENT

1. This lawsuit seeks damages, declaratory, and other relief for United's multiple and continued breaches of the 2009 Medical Group Participation Agreement (the "2009 Agreement") between the parties.

2. United has intentionally ignored its material obligations under the 2009 Agreement and engaged in improper and unlawful "self-help." Among other breaches, United has failed to add or "affiliate" new Envision provider groups under the terms of the 2009 Agreement. United also has unilaterally adjusted downward the contractual rates owing to

Envision despite the specific prohibition against such actions upon notice of dispute, which notice was issued by Envision in December 2017. As a result, Envision has been damaged.

3. By ignoring Envision's dispute notice and implementing the unilateral adjustments to the contractual rates, United also has frustrated the 2009 Agreement's bargained-for dispute resolution process. As a result, Plaintiffs have been deprived of the 2009 Agreement's bargained-for dispute resolution process and have been left with no recourse but to file this lawsuit.

4. Significantly, the impact of United's conduct extends beyond Plaintiffs to patients who are United enrollees. United's unjustified refusal to affiliate entities timely or at all hurts patients financially, while saving United money at the patients' expense.

5. There is no question that United has and continues to willfully disregard the unambiguous express terms of the 2009 Agreement as part of an overall strategy designed to injure Plaintiffs' reputation among patients and cause significant financial harm to Plaintiffs' business sufficient to pressure Plaintiffs to contract with United on unreasonable terms or to be out-of-network.

6. United's conduct has and continues to cause Plaintiffs substantial harm which continues to accrue. Through this lawsuit, Plaintiffs seek an order rescinding and invalidating the 2009 Agreement's dispute resolution provision, damages, and other appropriate relief as set forth herein.

## THE PARTIES

7. Plaintiff Envision HealthCare Corporation is a publicly-traded healthcare company offering healthcare-related services to consumers, hospitals, healthcare systems, health plans, and local, state, and federal governmental entities.

8. Envision is a corporation organized and existing under the laws of Delaware with a principal place of business at 1A Burton Hills Blvd, Nashville, Tennessee 37215.

9. Plaintiff Sheridan HealthCorp, Inc. is a wholly owned subsidiary of Envision and is one of the leading providers of healthcare solutions for anesthesiology, emergency medicine and women's and children's radiology. Sheridan is a corporation organized and existing under the laws of the State of Florida, with a principal place of business at 7700 West Sunrise Boulevard, Plantation, Florida 33322.

10. Defendant United HealthCare Insurance Company is a corporation organized and existing under the laws of Connecticut with a principal place of business at 185 Asylum Street, Hartford, Connecticut 06103.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the parties are completely diverse and the amount in controversy, exclusive of interest and costs, exceeds $75,000. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

### United Fails to Affiliate
### New Providers After Envision Acquires Sheridan

13. In or around 2013, AmSurg Corp. ("AmSurg") purchased Sheridan which continued to operate under its own name.

14. Thereafter, on or around December 1, 2016, Envision merged with AmSurg. As a result of that merger, Sheridan became a wholly owned subsidiary of Envision.

15. Consistent with the express terms of the 2009 Agreement between Sheridan and United, any affiliated entities under **common ownership** with Sheridan became subject to the 2009 Agreement. A true and correct copy of the 2009 Agreement is attached hereto as Exhibit A.[1]

16. Section 3.1 of the 2009 Agreement provides:

> This Agreement applies to Medical Group's practice locations set forth in Appendix 1. In the event Medical Group begins providing services at other locations (either by creating a new entity which becomes a part of the Medical Group, opening such locations itself, **or by acquiring, merging or coming under common ownership and control with an existing provider of services** that was not already under contract with United or one of United's Affiliates to participate in a network of health care providers), such additional locations will be added to Appendix 1 and become subject to this Agreement **30 days** after United receives the notice required under section 5.7(v) of this Agreement.

See Ex. A § 3.1 (emphasis added).

17. Thus, any entity acquired by, merged with, or that **comes under common ownership** with Sheridan is subject to Section 3.1 and entitled to be affiliated under the 2009 Agreement.

18. Prior to the AmSurg-Envision merger, Sheridan and United amended the 2009 Agreement on or around January 1, 2016 (the "2016 Amendment"). A true and correct copy of the 2016 Amendment is attached hereto as Exhibit B.

---

[1] All exhibits referenced to herein are being filed under seal with the Court pursuant to Local Rule 5.4 as codified in CM/ECF Rule 9 for the Southern District of Florida.

19. Through the 2016 Amendment, the parties agreed to amend the second paragraph of Section 3.1 to provide additional protection and predictability to United for certain affiliation events involving new groups that had existing contracts with United:

> This Agreement and the other agreement will each remain in effect and will continue to apply as they did prior to the Medical Group Affiliation Event until the applicable Affiliation Conversion Date, at which time the prior agreement will terminate and this Agreement will apply. For purposes of this section, "Medical Group Affiliation Event" means any transaction by which Medical Group **acquires or is acquired by, merges with, or otherwise becomes affiliated** with another entity that provides health care services and that is already under contract with United or one of United's Affiliates to participate in a network of health care providers without regard to whether Medical Group adopts the Taxpayer Identification Number ("TIN"). In addition, "Affiliation Conversion Date" means for (i) any Medical Group Affiliation Event that occurs between and including January 1 through June 30 of any given year, January 1 following the date of the Medical Group Affiliation Event; (ii) for any Medical Group Affiliation Event that occurs between and including July 1 and December 31 of any given year, January 1 that is at least 12 months after the date of the Medical Group Affiliation Event; or (iii) the date mutually agreed to by the parties.

See Ex. B ¶ 2 (emphasis added).

20. Consistent with its obligations, on December 30, 2016 Sheridan notified United of the Envision merger. A true and correct copy of Sheridan's December 30, 2016 notice to United is attached hereto as Exhibit C.

21. Due to the number of entities that needed to be affiliated as a result of the December 2016 merger, Sheridan sought guidance from United regarding the most efficient process for adding these entities to the 2009 Agreement as required. In its December 30, 2016 notice, Sheridan requested that United "please advise if we should modify our standard notification and enrollment practice to accommodate the complexity associated with this transaction." Id.

22. Over the next several months, United failed to provide any meaningful guidance regarding the onboarding of the new groups or whether any necessary modifications to the

5

agreed-upon historical processes for notifications and enrollment needed to be implemented, and generally failed to meaningfully respond to Envision on any discussions between the parties.

23. As a result, Plaintiffs began the formal notification process on August 24, 2017 by providing United with the rosters of Envision non-participating groups entitled to be affiliated within thirty (30) days. A true and correct copy of the August 24 Notice is attached as Exhibit D. Envision provided additional notices of non-participating groups to be affiliated within thirty (30) days to United on October 20, 2017.

24. However, United failed to comply with the 2009 Agreement. United affiliated only some, but not all, of the Envision groups referenced in the August 24, 2017 and October 20, 2017 notices, and United also failed to timely load various service lines of the providers, including but not limited to trauma, urgent care, and hospitalists. United further has failed to timely affiliate certain contracted groups effective January 1, 2018.

25. United's selective and arbitrary affiliation of some but not all of Plaintiffs' providers and its refusal to load service lines was and remains without justification or excuse, and it is not permitted by the 2009 Agreement.

### United Violates the Payment Appendices

26. United also has violated various provisions of the 2009 Agreement's Payment Appendices as amended January 1, 2016.

27. In 2016, the parties executed Payment Appendices which apply to services rendered by Envision to patients enrolled with United (collectively, the "2016 Payment Appendices"). The respective 2016 Payment Appendices are attached hereto as Exhibits E, F, G, and H, respectively.

28.     Each Payment Appendix governs the rights and obligations of Envision providers and United concerning the rates of payment, changes to the providers' charges, and the recovery of overpayments.

29.     Each Payment Appendix sets forth a Percentage Payment Rate ("PPR"), which is the percentage applied by United to the provider's billed charges when United reimburses the provider for services rendered to United's insureds and subscribers.

30.     According to Section 3.1 of each Payment Appendix, the intent of the PPR is to:

> allow Medical Group to modify its **Customary Charges when and how** Medical Group chooses, while assuring that increases to Medical Group's Customary Charges do not have the impact of increasing the amount paid by Payers under this Appendix beyond the level of increases from one Contract Year to the next succeeding Contract Year…

See Exs. E, F, G, H § 3.1 (emphasis added).

31.     The 2009 Agreement defines "Customary Charge" as "the retail fee for health care services charged by Medical Group that Medical Group would ordinarily charge another person before being afforded a discount from those retail fees." See Ex. A, Definitions.

32.     Under Section 3.2 of the 2016 Payment Appendices, Sheridan must notify United whenever it makes certain increases or changes to its Customary Charges.

33.     Upon receipt of such notice, from Sheridan, United:

> shall adjust the PPR using the estimates provided in Medical Group's notice. Based on Medical Group's notice, United will create and implement an amended version of this Appendix; the amended Appendix will be identical to this Appendix except that it will include the revised PPR set forth in Medical Group's notice. Provided that the amended Appendix contains no other changes, United may implement it without Medical Group's signature. United shall **promptly provide Medical Group with a copy of the Amended Appendix and shall indicate the effective date of the adjustments to the PPR**.

See Exs. E, F, G, and H § 3.5 (emphasis added).

34. Plaintiffs provided United with notice of a change to their Customary Charges on December 19, 2017. United has refused to implement an amended version of the Appendix consistent with the notice in violation of the 2016 Payment Appendices.

35. In addition, United has unilaterally adjusted the PPR for the majority of affiliated groups in violation of the terms of the 2016 Payment Appendices and their dispute resolution provisions based on Plaintiffs' alleged failures to notify United of increases in Customary Charges upon the affiliation of certain groups.

36. Plaintiffs dispute United's position and timely notified United of the dispute pursuant to Sections 3.7 and 3.8 of the 2016 Payment Appendices.

37. Section 3.7 provides that:

> In the event that United reasonably determines that an overpayment to Medical Group has resulted due to Medical Group's failure to give timely notice as required under this section, or due to Medical Group providing inaccurate information, or due to Medical Group providing incorrect estimates of the adjustments needed to the PPR, United may recover those payments by giving notice to Medical Group subject to the terms of the last paragraph of this Section and Section 3.8. The notice will identify how United will recover the overpayment and how United will prospectively adjust the PPR to prevent additional overpayments from occurring.
>
> United will timely meet with Medical Group, upon Medical Group's request, to discuss and explain the information in United's notice, how United calculated the information, and why United believes this information to be correct. In the event that Medical Group **initiates dispute resolution** as further described under section 3.8, **the recovery and adjustments described in this section 3.7 will <u>not</u> take place until the <u>conclusion</u> of the dispute resolution process and after United provides Medical Group the opportunity to pay the amount due within thirty days after the conclusion of the dispute resolution process.**

See Exs. E, F, G, and H § 3.7 (emphasis added).

38. Further, "[i]n the event Medical Group disagrees with United as to the existence of an overpayment or the amount of the overpayment, the issue will be resolved through the dispute resolution process set forth in the Agreement." See Exs. E, F, G, and H § 3.8.

39.     The dispute resolution process referenced in Sections 3.7 and 3.8 of each Payment Appendix is embodied in Article VIII of the Agreement and in relevant part provides:

> The parties will work together in good faith to resolve any and all disputes between them (hereinafter referred to as "Disputes") including but not limited to all questions of arbitrability, the existence, validity, scope or termination of the Agreement or any term thereof.
>
> If the parties are unable to resolve any such Dispute within **60 days following the date one party sent written notice of the Dispute to the other party**, and if either party wishes to pursue the Dispute, it shall thereafter be submitted to binding arbitration in accordance with the Commercial Dispute Procedures of the American Arbitration Association, as they may be amended from time to time … Unless otherwise agreed to in writing by the parties, the party wishing to pursue the Dispute must initiate the arbitration within one year after the date on which **notice of the Dispute** was given or shall be deemed to have waived its right to pursue the dispute in any forum…
>
> The parties expressly intend that any dispute relating to the business relationship between them be resolved on an individual basis so that no other dispute with any third party(ies) may be consolidated or joined with our dispute. The parties agree that any ruling by an arbitrator finding that this provision permits class arbitration or requiring consolidated arbitration involving any third party(ies) would be contrary to their intent and would require immediate judicial review of such ruling. In the event this provision requiring the parties to submit their disputes to individual arbitration is found unconscionable, this arbitration agreement shall be stricken in its entirety…
>
> Except as set forth above, in the event that any portion of this Article or any part of this Agreement is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this Article or Agreement. In the event any court determines that this arbitration procedure is not binding or otherwise allows litigation involving a Dispute to proceed, the parties hereby waive any and all right to trial by jury in, or with respect to, such litigation. Such litigation would instead proceed with the judge as the finder of fact.

<u>See</u> Ex. A, Art. VIII (emphasis added).

40.     These provisions are clear. Once United is on notice of a dispute to an adjustment to the PPR or any attempt by United to recover alleged overpayments, United must refrain from implementing such an adjustment to the PPR and/or any recovery of such overpayments pending the completion of the dispute resolution process.

41. Without justification or excuse, United has failed and refused to adhere to Sections 3.7 and 3.8 of the 2016 Payment Appendices.

42. United has frustrated the purpose of the 2016 Payment Appendices and the dispute resolution process set forth in Article VIII of the 2009 Agreement, and United has completely deprived Plaintiffs of the express and bargained-for benefits of those Agreements.

43. United has implemented these unilateral adjustments notwithstanding Plaintiffs' repeated objections and notices of dispute. Furthermore, United has failed and refused to provide copies of the amended Payment Appendices reflecting any adjusted PPRs as required by Section 3.5 of the 2016 Payment Appendices. See Ex. E, F, G, and H § 3.5.

44. On December 1, 2017, United advised that the new PPR for a substantial patient population would be significantly reduced effective December 15, 2017. A true and correct copy of United's December 1, 2017 correspondence is attached hereto as Exhibit I.

45. United also advised that, based on the new PPRs, there had been overpayments from September 25, 2017 through December 15, 2017 (the date the new PPRs would become effective) in the amount of $5 million. Id.

46. On December 4, 2017, Plaintiffs issued a formal notice of their disputes concerning: (1) United's unilateral adjustment of the PPR; and (2) United's intent to seek recoupment of $5 million in alleged overpayments. A true and correct copy of Plaintiffs' December 4, 2017 correspondence is attached hereto as Exhibit J.

47. Plaintiffs' December 4, 2017 correspondence expressly reminded United of its obligation not to engage in any recovery efforts until the conclusion of the dispute resolution process as set forth in Article VIII of the 2009 Agreement and Sections 3.7 and 3.8 of the 2016 Payment Appendices. Id.

48. On December 6, 2017, United advised that it intended to unilaterally and further adjust the PPRs downward effective December 15, 2017. A true and correct copy of the December 6, 2017 correspondence from United is attached hereto as Exhibit K.

49. United made these adjustments over Plaintiffs' written objections and notice of dispute.

50. The net effect of United's foregoing unilateral adjustments is substantial and has caused significant harm to Plaintiffs.

51. United continues to move forward with the unilateral adjustments despite the prohibition to do so once put on notice of a dispute.

52. On December 14, 2017, for example, United confirmed both in a teleconference and via email that it would go forward with the prospective adjustments to the PPRs despite Envision's notice of dispute. United stated that it "has updated [its] systems to implement the change to the percentage payment rate as referenced in our previous correspondence." A true and correct copy of the December 14, 2017 email is attached hereto as Exhibit L.

53. On January 11, 2018 and January 25, 2018, United advised that it would implement additional and substantial unilateral adjustments to the PPRs, again effecting a substantial patient population. A true and correct copy of United's January 25, 2018 letter is attached hereto as Exhibit M.

54. Plaintiffs again objected to these unilateral adjustments to the PPRs on February 7, 2018. A true and correct copy of Plaintiffs' February 7, 2018 correspondence is attached hereto as Exhibit N.

55. Then, on February 21, 2018 United clearly and unambiguously advised that United would engage in more self-help. United affirmatively stated to Envision that United

intends to seek "overpayments" from Plaintiffs in the amount of $136.55 million since 2015. A true and correct copy of United's February 21, 2018 correspondence is attached hereto as Exhibit O.

56.     Just as United has improperly ignored the prohibition against unilateral adjustments over Plaintiffs' objections and notices, United's attempt to seek repayment for alleged overpayments from 2015 through 2016 is expressly prohibited by Section 7.10 of the 2009 Agreement, which provides:

> In the event that either Party believes that a claim has not been paid correctly, or that funds were paid beyond or outside of what is provided for under this Agreement, either party may seek correction of the payment by giving the other party notice, **within 12 months after the payment was initially made**, that it believes the payment was made incorrectly.

See Ex. A § 7.10 (emphasis added).

57.     Accordingly, United's attempts to recover alleged overpayments prior to December 6, 2016 (i.e., twelve months prior to United's December 6, 2017 notice) are expressly barred, but United has clearly and unambiguously stated that it will unilaterally do so anyway. Thus, United has further breached and anticipatorily breached the 2009 Agreement.

## Count I
## Declaratory Judgment Pursuant 28 U.S.C. §§ 2201 and 2202

58.     Plaintiffs incorporate each of the preceding Paragraphs as if set forth in full.

59.     Plaintiffs bring this action for declaratory judgment pursuant 28 U.S.C. §§ 2201 and 2202, so as to determine the rights, liabilities, and obligations of the parties with respect to (a) the enforceability of Article VIII and the dispute resolution process contemplated by the 2009 Agreement and (b) United's stated intent to seek repayment for alleged overpayments from 2015 through 2016 notwithstanding the express bar to such repayment contained in Section 7.10 of the 2009 Agreement.

60. Under the 2016 Payment Appendices, United is prohibited from implementing any adjustments to the PPRs upon notice of Plaintiffs' objection to such adjustments until the conclusion of the dispute resolution process consistent with Article VIII of the 2009 Agreement. See Exs. E, F, G, and H §§ 3.7 and 3.8; see also Ex. A, Art. VIII.

61. Consistent with the clear directive of the 2016 Payment Appendices and the 2009 Agreement, United has been on notice that the adjustments to the PPRs are disputed.

62. Notwithstanding, United has moved forward with implementing the new PPRs and seeks to recover alleged overpayments. Plaintiffs have disputed this in writing.

63. In doing so, United has violated, and continues to violate, the express terms of the 2009 Agreement and the 2016 Payment Appendices requiring the maintenance of the status quo during the pendency of a dispute.

64. United's actions frustrate the entire purpose of the bargained-for dispute resolution process.

65. Having been deprived of the benefit intended by the dispute resolution process (i.e., maintaining the status quo pending resolution of the dispute), Plaintiffs are left with no meaningful remedy.

66. As a result, Plaintiffs contend the dispute resolution process is null and void, and there exists an actual, substantial, and continuing justiciable controversy between the parties.

67. Plaintiffs cannot and should not be required to adhere to the dispute resolution process contained Article VIII of the 2009 Agreement while United engages in its unlawful and improper self-help.

68. Plaintiffs respectfully request that, in light of the circumstances set forth above, the Court declare:

    a. that United's material breach of the dispute resolution process contained in the 2016 Payment Appendices and in Article VIII of the 2009 Agreement voids and rescinds any agreement between the parties to submit disputes regarding arbitrability to an arbitrator;

    b. that United is prohibited from implementing the adjusted PPRs and attempting to offset or recover any overpayments during the pendency of this litigation; and

    c. that Section 7.10 of the 2009 Agreement bars United from seeking or obtaining repayment for alleged overpayments from 2015 through 2016.

## Count II
## Breach of the 2009 Agreement and the 2016 Payment Appendices

69. Plaintiffs incorporate each of the preceding Paragraphs as if set forth in full.

70. The 2009 Agreement and the 2016 Payment Appendices are valid and binding agreements between the parties.

71. United has materially breached the 2009 Agreement and the 2016 Payment Appendices through its unlawful and improper conduct.

72. As a direct result, Plaintiffs have been damaged and those damages continue to grow on a daily basis.

## Count III
## Breach of the 2009 Agreement's Express Covenant of Good Faith

73. Plaintiffs incorporate each of the preceding Paragraphs as if set forth in full.

74. Article VIII of the 2009 Agreement provides that "[t]he parties will work together in good faith to resolve any and all disputes between them (hereinafter referred to as "Disputes")

including but not limited to all questions of arbitrability, the existence, validity, scope or termination of the Agreement or any term thereof." See Ex. A, Art. VIII.

75. Consistent with the clear directive of the 2016 Payment Appendices and the 2009 Agreement, Plaintiffs have repeatedly put United on notice that they dispute the adjustments to the PPRs.

76. Despite these notices, United has moved forward with implementing the new PPRs.

77. United's implementation of the new PPRs has violated its express promise to "work together in good faith to resolve any and all disputes." Id.

78. United's breach of its express promise to act in good faith materially breaches the agreement between Plaintiffs and United to submit Disputes, "including but not limited to all questions of arbitrability" to binding arbitration. Id.

79. As a result, Plaintiffs have been damaged, and continue to be damaged.

## Count IV
## Breach of Implied Covenants of Good Faith and Fair Dealing

80. Plaintiffs incorporate each of the preceding Paragraphs as if set forth in full.

81. The 2009 Agreement and the 2016 Payment Appendices each contain implied covenants of good faith and fair dealing.

82. Through United's foregoing unlawful conduct, United has materially breached the implied covenants of good faith and fair dealing and deprived Plaintiffs of the benefit of their bargain with United.

83. Through United's foregoing unlawful and improper conduct, Plaintiffs have suffered and continue to suffer substantial damages.

**WHEREFORE**, Plaintiffs Envision HealthCare Corporation and Sheridan HealthCorp, Inc., demand judgment in their favor and against Defendant United HealthCare Insurance Company, as follows:

    a.    A judicial declaration declaring:

        i.    that United's material breach of the dispute resolution process contained in the 2016 Payment Appendices and in Article VIII of the 2009 Agreement voids and rescinds any agreement between the parties to submit disputes regarding arbitrability to an arbitrator;

        ii.    that United is prohibited from implementing the adjusted PPRs and attempting to offset or recover any overpayments during the pendency of this litigation; and

        iii.    that Section 7.10 of the 2009 Agreement bars United from seeking or obtaining repayment for alleged overpayments from 2015 through 2016;

    b.    Restraining and enjoining United from implementing the adjusted PPRs during the pendency of this litigation;

    c.    Restraining and enjoining United from attempting to offset or recover, or otherwise engaging in any unilateral offset, recovery, or other self-help for any alleged overpayments during the pendency of this litigation;

    d.    Requiring United to affiliate all providers and entities and to load all service lines as required by United's contractual obligations;

    e.    Compensatory damages;

    f.    Punitive damages;

g.  Prejudgment and post judgment interest; and

h.  Such other relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs Envision HealthCare Corporation and Sheridan HealthCorp, Inc., hereby demand a jury trial on all issues so triable.

Dated:  March 12, 2018

        WALDMAN TRIGOBOFF HILDEBRANDT
          & CALNAN, P.A.
        100 N.E. Third Avenue, Suite 780
        Fort Lauderdale, Florida 33301
        Telephone:  (954) 467-8600
        Facsimile:   (954) 467-6222

        By:  /s/ *Glenn J. Waldman, Esq.*
            Glenn J. Waldman, Esq.
            Florida Bar No. 374113
            Gwaldman@waldmanlawfirm.com
            Eric C. Edison, Esq.
            Florida Bar No. 10379
            Eedison@waldmanlawfirm.com

Of counsel:

Anthony Argiropoulos, Esq.
New Jersey Bar No. 024861997
Scheherazade Wasty, Esq.
New Jersey Bar No. 091412014
**EPSTEIN BECKER & GREEN, P.C.**
150 College Road West, Suite 301
Princeton, NJ 08540
(609) 455-1540
Attorneys for Plaintiffs
Envision HealthCare Corporation,
and Sheridan HealthCorp, Inc.