UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.18-cv-60530-UU

ENVISION HEALTHCARE CORPORATION,
and SHERIDAN HEALTHCORP, INC.,

      Plaintiffs,

v.

UNITED HEALTHCARE INSURANCE
COMPANY,

      Defendant.

_____/

**PLAINTIFFS ENVISION HEALTHCARE CORPORATION'S AND SHERIDAN
HEALTHCORP, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED HEALTHCARE INSURANCE COMPANY'S
MOTION TO COMPEL ARBITRATION**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND.......................................................................................................2

      A.     The Negotiation and Execution of the 2009 Agreement and its Dispute
            Resolution Process ..........................................................................................2

      B.     United's Unilateral Implementation of Adjustments to the PPRs .........................5

ARGUMENT ..............................................................................................................................9

      I.     Legal Standard ................................................................................................9

      II.    United Has Willfully, Knowingly and Intentionally Breached the Dispute
           Resolution Process and thus Waived any Right to Arbitration.............................10

CONCLUSION..........................................................................................................................13

REQUEST FOR HEARING......................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bradley v. Health Coalition, Inc.*,
  687 So. 2d 329 (1997)............................................................................................1, 11, 12

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005) ...........................................................................................1, 9

*Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*,
  160 So. 3d 955 (Fla. Dist. Ct. App. 2015) ...................................................................10

*Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*,
  436 F.2d 405 (5th Cir. 1971) ...........................................................................................9

*Colucci v. Kar Kare Automotive Group, Inc.*,
  918 So. 2d 431 (2006)...................................................................................................9, 11

*Covelli Family, L.P. v. ABG5, L.L.C.*,
  977 So. 2d 749 (Fla. 4th DCA 2008) ...........................................................................12

*Garcia v. Wachovia Corp.*,
  699 F.3d 1273 (11th Cir. 2012) .......................................................................................1

*Hooters of Am., Inc. v. Phillips*,
  173 F.3d 933 (4th Cir. 1999) ...................................................................................2, 9, 12

*Housing and Residence Life, LLC v. Universal Technical Institute of Phoenix,
  Inc.*,
  2013 U.S. Dist. LEXIS 120328 (M.D. Fla. Aug. 23, 2013) ......................................11

*Inspired Development Group LLC v. Inspired ProductsLLC Group*,
  Case No. 9:16-CV-80076, 2017 WL 411997 (S.D. Fla. Jan. 31, 2017) ...........................10, 11

*Ivax Corp. v. B. Braun of Am.*,
  286 F.3d 1309 (11th Cir. 2002) ...........................................................................1, 9, 10, 12

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995)...........................................................................................................12

*Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*,
  62 F.3d 1356 (11th Cir. 1995) ...........................................................................................9

*Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. RRG*,
  No. 11-61577-CIV-ALTONAGA/Simonton, 2012 U.S. Dist. LEXIS 157585
  (S.D. Fla. Nov. 2, 2012)...................................................................................................13

*S & H Contractors, Inc. v. A.J. Taft Coal Co.*,
 906 F.2d 1507 (11th Cir. 1990) ........................................................................1, 12

*Seaboard Coast Line R.R. Co. v. Trailer Train Co.*,
 690 F.2d 1343 (11th Cir. 1982) ...............................................................................9

*In the Matter of Walter W. Thomas, Debtor*,
 51 B.R. 653 (Bankr. M.D. Fla. 1985) ...............................................................1, 12

**Other Authorities**

Local Rule 7.1(b)(2)....................................................................................................14

## PRELIMINARY STATEMENT

Defendant United HealthCare Insurance Company ("United") moves to compel arbitration based on the dispute resolution provisions that United has intentionally breached by engaging in prohibited economic "self-help." To avoid public scrutiny of its unlawful practices against the healthcare providers who care for patients, it asks this Court to allow it to hide in private arbitration. United's wrongful conduct here is not unusual. By example, United has a long history of engaging in systematic underpayments to out of network providers for which it has been held accountable and forced to pay hundreds of millions of dollars in additional reimbursement. In those instances United is not able to hide its bad acts in the private forum as it seeks to do here with Plaintiffs who are in network and participating with United, or with other in network providers.

Simply put, United cannot have its cake and eat it too. The parties bargained for a specific dispute resolution process in their 2009 Medical Group Participation Agreement (the "2009 Agreement") and the 2016 Payment Appendices, which required both parties to act consistent with that process; however, United's actions are so wholly inconsistent with that bargained-for process that United has waived the right to compel arbitration. *See Ivax Corp. v. B. Braun of Am.*, 286 F.3d 1309, 1315 (11th Cir. 2002) ("an agreement to arbitrate, just like any other contract… may be waived"); *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) ("a party may, by its conduct, waive its right to arbitration"); *Bradley v. Health Coalition, Inc.*, 687 So. 2d 329, 333 (1997) (*citing In the Matter of Walter W. Thomas, Debtor*, 51 B.R. 653, 654 (Bankr. M.D. Fla. 1985)) (material breach of agreement discharges performance by non-breaching party); *Garcia v. Wachovia Corp.*, 699 F.3d 1273 (11th Cir. 2012) (arbitration was waived where movant acted inconsistent with arbitration right); *Brown v.*

*Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) (breach of arbitration agreement prevents breaching party from compelling arbitration); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 941 (4th Cir. 1999) (arbitration provisions are unenforceable where one party has been deprived of the bargained-for arbitration process as a result of the other party's breach).

While the 2009 Agreement's alternative dispute resolution provisions are enforceable *as written*, United's material breach of those provisions fundamentally deprives Plaintiffs of the core purpose and intent of those provisions, and thus now renders them unenforceable.

Plaintiffs have been prejudiced by United's conduct, which has not only deprived Plaintiffs of the bargained-for dispute resolution process, but has also caused Plaintiffs to suffer the very severe and ongoing harm that the dispute resolution process was specifically designed to prevent.

Therefore, this Court should deny United's Motion.

## FACTUAL BACKGROUND

Plaintiff Sheridan and United are parties to the 2009 Agreement. Pursuant to the 2009 Agreement, Sheridan and its affiliates agreed to provide medical services to the enrollees of United and its affiliates. *See* Compl., Ex. A. Among other things, the 2009 Agreement contemplates that disputes relating to the 2009 Agreement shall be subject to the dispute resolution provisions contained therein. *See* Compl., Ex. A, Art. VIII, *see also* the April 11, 2018 Declaration of Jay A. Martus attached hereto as Exhibit A ("Martus Decl."), ¶¶ 8, 9, 10. These provisions were critical and material to the parties' meeting of the minds. Martus Decl., ¶¶ 9, 12.

### A.   The Negotiation and Execution of the 2009 Agreement and its Dispute Resolution Process.

The 2009 Agreement was the result of extensive negotiations. *See id.*, ¶¶ 4 and 10. The negotiations took place over several weeks, with the final week of negotiations principally

devoted to the dispute resolution process and its arbitration provisions. *See id.*, ¶ 4. The backdrop of the negotiations of the dispute resolution process is important. *See id.*, ¶ 5.

Prior to the negotiations of the 2009 Agreement, United and its affiliated HMO, Neighborhood Health Partnership, Inc. ("Neighborhood Health"), had written contracts with Sheridan. *Id.* However, United allowed those contracts to expire and terminate. *Id.* Following the termination of those contracts, Sheridan made a continuing offer to provide physician services to United and Neighborhood Health and members for an expressly stated amount of compensation. *Id.* The services included anesthesiology, neonatology, and radiology. *Id.* United and Neighborhood Health accepted Sheridan's continuing offer and agreed to pay the compensation by its performance and allowing its members to avail themselves of those services. *Id.* However, United refused to pay the expressly stated and agreed-upon compensation. *Id.* Ultimately, litigation ensued in the matter captioned *Sheridan HealthCorp, Inc. vs. Neighborhood Health Partnership, Inc., et al.*, Broward County Circuit Court, Case No. 06-08940 CACE (07) (the "*Neighborhood Health/United Litigation*"). *See id.*, ¶ 6. Sheridan obtained summary judgment, and United was required to pay the expressly stated and agreed-upon compensation owed to Sheridan. *Id.*

During the pendency of the *Neighborhood Health/United Litigation,* United and Sheridan negotiated a settlement of that lawsuit and also negotiated the 2009 Agreement. *See id.*, ¶ 7. Sheridan disfavored arbitration and preferred to have its disputes decided in a court of law with prevailing party attorneys' fees provisions. *See id.*, ¶ 8. Sheridan also wanted to avoid the possibility that United would engage in self-help or otherwise fail to pay Sheridan. *Id.* United, conversely, was in favor of arbitration. *Id.* As Sheridan was not in favor of arbitration, a staged dispute resolution process was built, which among other things, required that United

communicate with Sheridan, provide Sheridan with notice before any offset, and allow Sheridan to object to any offset. *See id.*, ¶ 9. Then, if Sheridan objected to the offset, United was contractually prevented from applying the offset until after the dispute resolution process was concluded. *Id*. Obviously, this unique staged dispute resolution process was an essential and vital element of the parties' negotiations. *Id.*

The compromise that was ultimately reached by the parties after the active negotiations surrounding the dispute resolution process was memorialized in the 2009 Agreement and may be summarized as follows. *See id.*, ¶ 10. First, upon the existence of a "Dispute" between the parties, the disputing party shall send a written notice of "Dispute" to the other party. *Id*. This notice of "Dispute" commences the dispute resolution process. *Id.* During the pendency of the dispute resolution process, *i.e.*, after Sheridan has informed United of its dispute to the offset, United agreed that it would not, under any circumstances, engage in any offsets. *Id.* If the parties are unable to resolve the "Dispute" within "60 days following the date one party sent written notice of the Dispute to the other party" then the "Dispute" must then be submitted to binding arbitration within one year from the date of the notice of "Dispute." *Id.*

Absent United's express and clear promise not to offset or engage in economic self-help without strictly following the procedures for dispute resolution, Sheridan would **not** have agreed to the alternative dispute resolution procedure set forth in the 2009 Agreement. *See id.*, ¶ 11.

The relevant dispute resolution procedures agreed to by the parties as set forth above is contained in Article VIII and Section 7.10 of the 2009 Agreement. *See* Compl., Ex. A. Section 7.10 expressly provides that, "[d]uring the pendency of the dispute resolution process, United will not implement the offset." *Id.*, § 7.10. The parties made clear their intent and agreement to maintain the *status quo* during the pendency of a dispute resolution process clear. There is only

one instance (inapplicable to matters here) in which the dispute resolution process is not intended to preserve the *status quo*:

> [i]n the event Medical Group disputes whether a regulatory amendment to this Agreement by United is actually needed to achieve regulatory compliance, Medical Group may initiate dispute resolution pursuant to Article VII [sic] of this Agreement to resolve that question. **While the dispute resolution process is pending, the amendment will remain in effect**.

*Id.*, § 10.2 (emphasis added).

The parties recognized and bargained for situations, as here, in which the dispute resolution process could be vitiated. *See id.*, Art. VIII. Sheridan and United agreed that:

> …in the event any court determines that this arbitration procedure is not binding or otherwise allows litigation involving a Dispute to proceed, the parties hereby waive any and all right to trial by jury in, or with respect to, such litigation. Such litigation would instead proceed with the judge as the trier of fact.

*See id.*, Art VIII.

### B.    United's Unilateral Implementation of Adjustments to the PPRs.

In 2016, the parties executed Payment Appendices which apply to medical services rendered by Envision to patients enrolled with United (collectively, the "2016 Payment Appendices"). *See* Compl., ¶ 27. Each Payment Appendix sets forth a Payment Percentage Rate ("PPR"), which is the percentage applied by United to the provider's billed charges when United reimburses the provider for services rendered to United's insureds and subscribers. *Id.*, ¶ 29. On or around December 19, 2017, consistent with the terms of the 2016 Payment Appendices, Plaintiffs provided United with notice of a change to their Customary Charges. *Id.*, ¶ 34. United refused, and continues to refuse, to implement an amended version of the Payment Appendix consistent with the notice— which is a direct violation of the 2016 Payment Appendices. *Id.*

In addition, United has, without contractual authority, unilaterally adjusted the PPR for the majority of affiliated groups in violation of the terms of the 2016 Payment Appendices, and

the dispute resolution process, and the provisions contained therein and in the 2009 Agreement. *Id.*, ¶ 35. On December 1, 2017, United advised Envision of its intent to significantly reduce the PPR for a substantial patient population of United's own insureds, effective December 15, 2017. *Id.*, ¶ 44, Ex. I, *see also* April 11, 2018 Declaration of John L. Wolf attached hereto as Exhibit B ("Wolf Decl."), ¶ 9. At the same time, United also advised Envision that, based upon the new PPRs, United self-determined that it had allegedly made overpayments from September 25, 2017 through December 15, 2017 in the amount of $5 million. *See* Compl., ¶ 45, Ex. I, and Wolf Decl., ¶ 10.

In response to United's notice of its unilateral adjustments to the PPRs, Plaintiffs timely provided United with their contractual notice of "Dispute" on December 4, 2017 concerning: (a) United's unilateral adjustment to the PPR; and (b) United's intent to seek recoupment of $5 million in alleged overpayments. *See* Compl., ¶ 36, Ex. J, Wolf Decl., ¶ 11. Envision also expressly reminded United of its obligation not to engage in any recovery efforts until the conclusion of the dispute resolution process as provided in Article VIII of the 2009 Agreement and Sections 3.7 and 3.8 of the 2016 Payment Appendices. *See* Compl., ¶ 47, Ex. J, Wolf Decl., ¶ 11. In relevant part, Section 3.7 provides that:

> [i]n the event that Medical Group initiates dispute resolution as further described under section 3.8, **the recovery and adjustments** described in this section 3.7 **will not take place until the conclusion of the dispute resolution process** and after United provides Medical Group the opportunity to pay the amount due within **thirty days after the conclusion of the dispute resolution process**.

*See* Compl., ¶ 37, Exs. E, F, G, and H § 3.7 (emphasis added), Wolf Decl., ¶ 5. Further, Section 3.8 of the 2016 Payment Appendices similarly and expressly recognizes the dispute resolution process and its provisions as contained throughout the 2009 Agreement. It provides that "[i]n the event Medical Group disagrees with United as to the existence of an overpayment or the amount

of the overpayment, the issue will be resolved through the dispute resolution process set forth in the Agreement." *See* Compl., ¶ 38, Exs. E, F, G, and H § 3.8, Wolf Decl., ¶ 6. The contractual bar against self-help contained in Sections 3.7 and 3.8 of the 2016 Payment Appendices is consistent with the same bar in the 2009 Agreement. *See* Wolf Decl., ¶ 7. Again, this was, and has always been, a vital part of the dispute resolution process and its provisions. *Id.*

Consistent with Sections 3.7 and 3.8 of the 2016 Payment Appendices, and pursuant to the dispute resolution process and provisions contained in the 2009 Agreement, once United has been put on notice of a "Dispute" to its proposed adjustment of the PPRs or any attempt by United to recover alleged overpayments, United must immediately cease and desist and not implement any such unilateral adjustment to the PPRs and/or any recovery of such overpayments pending completion of the dispute resolution process. *See* Compl., ¶ 40.

Despite these express prohibitions against engaging in self-help during the pendency of the dispute resolution process contained in the 2009 Agreement and the 2016 Payment Appendices, and Envision's timely notifications of "Dispute," United willfully disregarded its obligations. *See* Wolf Decl., ¶ 8. In fact, in response to Envision's December 3, 2017 notice of "Dispute," on December 6, 2017 United advised Envision that it intended to unilaterally and further adjust the PPRs downward effective December 15, 2017. *See* Compl., ¶ 48, Ex. K, Wolf Decl., ¶ 12.

Thereafter, United again acted inconsistently with the dispute resolution process and its requirements on December 14, 2017, when United again confirmed both in a teleconference and via email that it intended to move forward with prospective adjustments to the PPRs; and United did so again, on January 11 and again on January 25, 2018, when United advised Envision of its

intent to make further and substantial unilateral adjustments to the PPRs (again affecting a substantial patient population). *See* Compl., ¶¶ 52, 53, Exs. L and M, Wolf Decl. ¶¶ 13, 14.

On February 7, 2018, Envision objected and disputed United's unilateral adjustments as well as any other and further or unilateral adjustments. *See* Compl., ¶ 54, Ex. N, Wolf Decl., ¶ 15. In response to Envision's most recent notice of "Dispute," and rather than honoring the contractual bar against self-help during the pendency of a dispute resolution process, on February 21, 2018, United informed Envision of its intent to seek recovery of alleged overpayments from Plaintiffs in the amount of $136.55 million since 2015. *See* Compl., ¶¶ 55, 56, Ex. O, Wolf Decl., ¶ 16. Again, and in response to United's demand for recovery of alleged overpayments and recoupments, on February 26, 2018, Envision disputed United's entitlement to such alleged overpayments. *See* Wolf Decl., ¶ 17. United's attempt to seek repayment for alleged overpayments from 2015 through 2016 is expressly prohibited by Section 7.10 of the 2009 Agreement, which provides that:

> In the event that either Party believes that a claim has not been paid correctly, or that funds were paid beyond or outside of what is provided for under this Agreement, either party may seek correction of the payment by giving the other party notice, **within 12 months after the payment was initially made**, that it believes the payment was made incorrectly.

*See* Compl., Ex. A §7.10 (emphasis added).

In sum, Plaintiffs repeatedly and diligently put United on notice of their "Disputes" concerning United's unilateral adjustments to the PPRs, however, United has uniformly disregarded the notices and instead proceeded with the unilateral adjustments to the PPRs. *See* Wolf. Decl., ¶ 18. United's conduct has and continues to prejudice Plaintiffs by destroying the core component of the dispute resolution process and causing significant financial harm to Plaintiffs which continues to grow on a daily basis. *See id.*, ¶ 19.

## ARGUMENT

United's unambiguous waiver and material breach of its obligations under the 2009 Agreement's alternative dispute resolution provisions renders the benefits, if any, unavailable to United. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) ("[h]aving breached the arbitration agreement [defendant] cannot now enforce it"); *Ivax Corp. v. B. Braun of Am.*, 286 F.3d 1309, 1315 (11th Cir. 2002) (like any other contract an agreement to arbitrate "may be waived"); *Hooters of Am., Inc.*, 173 F.3d at 941 (the court determined that where "[employer] materially breached the arbitration agreement" arbitration could not be compelled).

### I.    Legal Standard

While "[f]ederal policy favors arbitration over litigation," *Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir. 1982), "[a]rbitration should not be compelled when the party who seeks to compel arbitration has waived that right." *See Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1365 (11th Cir. 1995). "[A]n agreement to arbitrate, just like any other contract…, may be waived[,]" *see Ivax Corp.*, 286 F.3d at 1315 (internal quotation marks omitted and ellipses in original) (*citing Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 407 (5th Cir. 1971)), and where, as here, an arbitration contract's provisions are materially breached, such a breach excuses performance by the non-breaching party. *See Colucci v. Kar Kare Automotive Group, Inc.*, 918 So. 2d 431, 437 (2006) (citation omitted) ("the general rule is that a material breach of the [a]greement allows the non-breaching party to treat the breach as a discharge of his contractual liability").

Whether the contractual right to arbitrate has been waived "depends upon the facts of each case." *See Burton-Dixie Corp.*, 436 F.2d at 408. Courts have established a two-part test: first, whether under the totality of the circumstances the other party "has acted inconsistent with

the arbitration right," and, second, whether through such actions (or inactions) the party "has in some way prejudiced the other party," as is the case presented here. *See Ivax Corp.*, 286 F.3d at 1315-16 (citation omitted).

Both of those criteria are present here. First, United acted flouted and disregarded the right to arbitration by (a) intentionally ignoring the salutary *status quo* provisions that are part and parcel of the alternative dispute resolution process and (b) intentionally engaging in economic self-help. Second, Plaintiffs have been significantly prejudiced because United's unlawful self-help has destroyed the consideration of the bargained-for dispute resolution process and has caused Plaintiffs to suffer and continue to suffer substantial financial damages that continue to grow daily.

## II.    United Has Willfully, Knowingly, and Intentionally Breached the Dispute Resolution Process and thus Waived any Right to Arbitration

United misleads this Court by framing the issue as whether the 2009 Agreement contains a valid and enforceable arbitration provision. *See* United's Motion to Compel Br. 9. Plaintiffs do not contend that the arbitration provisions are *unenforceable as written*. Instead, the issue before this Court is whether United's repeated and material breaches of the dispute resolution process contained in the 2009 Agreement and the 2016 Payment Appendices waived United's contractual right to arbitrate.

A material breach exists under Florida state contract law where "a party failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties." *Inspired Development Group LLC v. Inspired Products Group LLC*, Case No. 9:16-CV-80076, 2017 WL 411997, *3 (S.D. Fla. Jan. 31, 2017) (quotation marks omitted) (*citing Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. Dist. Ct. App. 2015)).

There is no question that United breached. United initially told Plaintiffs that it intended to engage in unilateral adjustments to the PPRs and seek recovery of alleged overpayments on December 1, 2017. *See* Wolf Decl., ¶ 9. Plaintiffs immediately provided United with their notice of "Dispute" consistent with the express terms of the dispute resolution process contained in the 2009 Agreement and the 2016 Payment Appendices. *See id.*, ¶ 11. However, in the face of the notice, and despite being formally reminded in writing of its obligations not to engage in any economic self-help, United proceeded with its unilateral adjustments to the PPRs effective December 15, 2017. *See id.*, ¶ 12.

United breached again in January 2018. This time, United advised Envision that United intended to engage in further and substantial adjustments to the PPRs. *See id.*, ¶ 14. Envision timely disputed this, too, and put United on notice of the "Dispute" and United's concomitant obligations not to effectuate these adjustments during the pendency of the dispute resolution process. *See id.*, ¶ 15. United proceeded with the unilateral adjustments anyway, and United's actions knowingly and unambiguously violated the dispute resolution process contained in the 2009 Agreement and the 2016 Payment Appendices.

Here, United's breach is undeniably material and thus relieves Plaintiffs from any obligation to otherwise arbitrate. *See, e.g., Colucci*, 918 So. 2d at 437 (a material breach of a contract excuses non-breaching party from performance of that agreement); *Inspired Development Group LLC*, supra, 2017 WL 411997 at *3 (same); *Bradley*, 687 So. 2d at 333 (same); *Housing and Residence Life, LLC v. Universal Technical Institute of Phoenix, Inc.*, 2013 U.S. Dist. LEXIS 120328, *25 (M.D. Fla. Aug. 23, 2013) (same). The bar against United's self-help in the form of offsets, recoupments, or adjustments after United's receipt of a notice of "Dispute" was the critical component of the 2009 Agreement underpins the essence of the

dispute resolution process. *See* Martus Decl., ¶¶ 9, 12. But for that bar, Sheridan would **not** have entered into the 2009 Agreement nor agreed to the alternative dispute resolution process. The bar was vital and the *sine qua non* of the 2009 Agreement's dispute resolution process and subsequently the corresponding process contained in the 2016 Payment Appendices.[1]

United's conduct is manifestly inconsistent with the dispute resolution provisions, and through its conduct United has waived its right to arbitration. *See S & H Contractors, Inc.*, 906 F.2d at 1514 ("a party may, by its conduct, waive its right to arbitration"); *see also Hooters of Am., Inc.*, 173 F.3d at 941 (the court determined that where "[employer] materially breached the arbitration agreement" arbitration could not be compelled). United cannot seriously contend that Plaintiffs should be required to uphold the bargain that United has waived through its repeated material breaches. *See Bradley*, 687 So. 2d at 333 (*citing In the Matter of Walter W. Thomas, Debtor*, 51 B.R. 653, 654 (Bankr. M.D. Fla. 1985)) ("[h]aving committed the first breach, the general rule is that a material breach of the Agreement allows the non-breaching party to treat the breach as a discharge of his contract liability").

Through its Motion, United invites the Court to ignore its material and repeated breaches and to rewrite the parties' agreement. This is impermissible. While federal policy favors arbitration, "courts are not to twist the language of the contract to achieve a result which is contrary to the intent of the parties." *Ivax*, 286 F.3d at 1320 (internal quotation marks and citations omitted). "The FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). Here, United would have this Court do much more than simply "*twist the*

---

[1] The bar against self-help was not a minor detail or a trivial provision of the parties' agreement, it was the crux of that agreement. *See id.*, ¶¶ 9, 12; *see also Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008) (internal quotation marks and citation omitted) ("a party's failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach[]").

*language*" of the 2009 Agreement and the 2016 Payment Appendices. United would have this Court completely eviscerate their vital terms, *i.e.*, the requirement that United not engage in economic self-help.

Plaintiffs have suffered significant prejudice as a result of United's misconduct. United has not only destroyed Plaintiffs' benefit of the bargain set forth in the arbitration provision, but has also caused it significant and continuing economic harm. United's request that the Court compel Plaintiffs to comply with an alternative dispute resolution process that United has wholly and profoundly breached epitomizes its unclean hands. *See Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. RRG*, No. 11-61577-CIV-ALTONAGA/Simonton, 2012 U.S. Dist. LEXIS 157585, at *48 (S.D. Fla. Nov. 2, 2012) (citation and quotation marks omitted) ("[u]nclean hands…closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [other party]").

## CONCLUSION

At bottom, the parties agreed that there would be certain narrow circumstances where a court of law would "*determine[] that this arbitration procedure is not binding or otherwise allows litigation involving a Dispute to proceed*." *See* Compl., Ex. A, Art. VIII. This is precisely such a circumstance. Accordingly, United's Motion should be summarily denied and this action should proceed expeditiously before this Court.

13

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiffs respectfully request a hearing on United's Motion. Given the importance of this matter, Plaintiffs wish to assist the Court to fully understand how United's conduct constitutes a waiver and breach of the alternative dispute resolution provisions and directly answer any questions the Court may have regarding the facts and applicable legal issues.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF to Dan J. Hofmeister, Esq., (dhofmeister@reedsmith.com); Reed Smith, LLP, 10 South Wacker Drive, 40th Floor, Chicago, Illinois, 60606-7507 Edward M. Mullins, Esq., (emullins@reedsmith.com) and Christina Olivos, Esq., (colivos@reedsmith.com), Reed Smith, LLP, 1001 Brickell Bay Drive, 9th Floor, Miami, Florida 33131 on this 3rd day of April, 2018.

Respectfully submitted,

/s/ Anthony Argiropoulos
Anthony Argiropoulos, Esq. (admitted *pro hac vice*)
aargiropoulos@ebglaw.com
Scheherazade Wasty, Esq. (admitted *pro hac vice*)
swasty@ebglaw.com
**EPSTEIN BECKER & GREEN, P.C.**
150 College Road West, Suite 301
Princeton, NJ 08540
(609) 455-1540
Attorneys for Plaintiffs Envision HealthCare
Corporation and Sheridan HealthCorp, Inc.

/s/ Glenn J. Waldman
Glenn J. Waldman, Esq.
Florida Bar No. 374113
Gwaldman@waldmanlawfirm.com
Eric C. Edison, Esq.
Florida Bar No. 10379
Eedison@waldmanlawfirm.com

14

WALDMAN TRIGOBOFF HILDEBRANDT
& CALNAN, P.A.
100 N.E. Third Avenue, Suite 780
Fort Lauderdale, Florida 33301
Telephone:  (954) 467-8600
Facsimile:  (954) 467-6222
Attorneys for Plaintiffs Envision HealthCare
Corporation and Sheridan HealthCorp, Inc.